Mark D. Lammers
State Bar No. 010335
RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, AZ 85718
Tel: 520.792.4800
Fax: 520.529.4262
mdlammers@rllaz.com

*Attorney for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chik Chan, derivatively on behalf of ON Semiconductor Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Atsushi Abe; Alan Campbell; Susan K. Carter; Thomas L. Deitrich; Hassane El-Khoury; Simon Keeton; Bruce E. Kiddoo; Paul A. Mascarenas; Thad Trent; Gregory Waters; and Christine Yan,<br><br>Defendants,<br><br>and<br><br>ON Semiconductor Corporation,<br><br>Nominal Defendant. | Case No.:<br><br>**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **INTRODUCTION**

Plaintiff Chik Chan ("Plaintiff"), by and through his counsel, derivatively on behalf of Nominal Defendant ON Semiconductor Corporation ("Onsemi," "onsemi," or the "Company"), submits this Verified Stockholder Derivative Complaint against Defendants and alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which included, *inter alia*, review and analysis of (i) regulatory filings made by Onsemi with the United States Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Onsemi; (iii) the Securities Class Action captioned *Hubacek v On Semiconductor Corporation et al.*, Case No. 1:23-01429-UNA in the United States District Court for the District of Delaware against certain officers and members of the Company's Board of Directors (the "Board") alleging that they made false and misleading statements of material fact and omitted material facts necessary to make other statements made not misleading between May 1, 2023 and October 27, 2023 (the "Relevant Period") with respect to Onsemi's business, operations, and prospects; and (iv) other publicly available information, including media and analyst reports, concerning Onsemi.

## **NATURE OF THE ACTION**

1.     This is a stockholder derivative action asserted on behalf of Nominal Defendant Onsemi against certain officers and the members of the Company's Board for the claims asserted herein to recover damages caused to the Company as described herein.

2.     Onsemi manufactures and sells semiconductor components for various electronic devices across several markets, including power and sensing solutions and technologies for the electrification of the automotive industry. The Company's long-term growth and success are highly dependent on Onsemi's business strategy, which is to focus on the development, manufacture, and sale of a variety of products using silicon carbide

("SiC") technology instead of regular silicon. Compared to silicon diodes, SiC diodes are more efficient and resistant to high temperatures and work at high frequencies and higher voltages.

3.     Throughout the Relevant Period, the Individual Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, the Individual Defendants failed to disclose that (i) the billions of dollars in revenue in reported long-term supply agreements ("LTSAs") were not "committed," "locked in," nor effectively certain to be obtained by the Company; (ii) LTSAs did not provide "predictable" and "sustainable" performance to drive the Company's growth; (iii) the Company did not have "good visibility" into customer demand; (iv) customer demand could be reduced on short notice, even where LTSAs were in effect; and (v) as a result, statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

4.     Thus, throughout the Relevant Period, the Individual Defendants repeated misrepresentations to investors regarding the "stability" and "visibility" of the demand for Onsemi's SiC and other products and the sustainability of Onsemi's revenue growth by overstating the impact of the Company's LTSAs on the achievability of its revenue streams.

5.     On October 30, 2023, Onsemi issued a press release announcing its third quarter 2023 financial results and announced that the Company was "taking a very cautious approach" with its SiC products due to signs of weakening demand and that Onsemi would miss its $1 billion 2023 SiC revenue target by approximately $200 million.

6.     On this news, the Company's stock price dropped $18.18, or 21.8%, to close at $65.34 per share on October 30, 2023.

7.     As alleged herein, the Individual Defendants breached their fiduciary duties and engaged in other misconduct to the Company's detriment and/or aided and abetted the same by engaging in, allowing, and/or facilitating the specific misstatements and omissions

described herein. As a direct and proximate result of the misconduct described herein by the Individual Defendants, Onsemi has sustained significant damages as described below.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint alleges a claim for violations of Section 10(b) and 21D of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy. This action is not a collusive one designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9.     This Court has jurisdiction over each Defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state and has consented to service in this state.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Onsemi. Venue is also proper pursuant to 28 U.S.C. § 1401 because Nominal Defendant Onsemi could have sued the same Defendants in this District.

## PARTIES

11.     Plaintiff is an Onsemi stockholder and has continuously held Onsemi stock from the time of the wrongdoing alleged herein until the present.  Plaintiff will fairly and adequately represent Onsemi's interest in this action.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

12.     Nominal Defendant Onsemi is incorporated under the laws of Delaware, and its principal executive offices are located in Scottsdale, Arizona. Onsemi's common stock trades on the Nasdaq exchange under the symbol "ON."

13.     Defendant Atsushi Abe ("Abe") has served as a member of the Board since February 2011 and has been a member of the Audit Committee since at least 2020.

14.     Defendant Alan Campbell ("Campbell") has been a member of the Board since August 2015, serving as its Chair since May 2017. He has been a member of the Audit Committee and the Corporate Governance and Nominating Committee ("Governance Committee") since at least 2020.

15.     Defendant Susan K. Carter ("Carter") has served as a member of the Board since October 2020 and has served as Chair of the Audit Committee and a member of the Governance Committee since 2021.

16.     Defendant Thomas L. Deitrich ("Deitrich") has served as a member of the Board since October 2020 and has been a member of the Governance Committee since 2022.

17.     Defendant Hassane El-Khoury ("El-Khoury") has served as President, Chief Executive Officer ("CEO"), and as a member of the Board since December 2020. For the Company's fiscal year 2022, Defendant El-Khoury received $984,615 in base salary, $12,557,026 in stock awards, $2,938,191 in non-equity incentive plan compensation, and $39,870 in all other compensation for a total of $16,519,702. Between May 15, 2023 and July 18, 2023, Defendant El-Khoury sold 70,000 shares of Company stock for proceeds of almost $6.6 million as shown by the following chart:

| Date of Transaction | Number of Shares Sold | Price | Proceeds |
|---|---|---|---|
| 5/15/2023 | 5,000 | $ 81.76 | $408,800.00 |
| 6/7/2023 | 22,500 | $90.01 | $2,025,225.00 |
| 6/15/2023 | 600 | $91.87 | $55,122.00 |

| Date of Transaction | Number of Shares Sold | Price | Proceeds |
|---|---|---|---|
| 6/15/2023 | 21,900 | $91.41 | $2,001,879.00 |
| 7/18/2023 | 20,000 | $105.00 | $2,100,000.00 |
| **Total** | **70,000.00** | | **$6,591,026.00** |

18.      Defendant Simon Keeton ("Keeton") has served as Executive Vice President ("EVP") and General Manager of the Company's Power Solutions Group since January 1, 2019. For the Company's fiscal year 2022, Defendant Keeton received $517,307 in base salary, $2,471,243 in stock awards, $842,487 in non-equity incentive plan compensation, and $34,761 in all other compensation for a total of $3,865,798. Between June 30, 2023 and October 5, 2023, Defendant Keeton sold 32,919 shares of Company stock for proceeds of almost $3.2 million as shown by the following chart:

| Date of Transaction | Number of Shares Sold | Price | Proceeds |
|---|---|---|---|
| 6/30/2023 | 11,310 | $95.00 | $1,074,450.00 |
| 7/1/2023 | 219 | $ 94.58 | $20,713.02 |
| 7/13/2023 | 10,276 | $100.00 | $1,027,600.00 |
| 7/31/2023 | 9,923 | $109.74 | $1,088,950.02 |
| 10/5/2023 | 1,191 | $88.17 | $105,010.47 |
| **Total** | **32,919** | | **$3,316,723.51** |

19.      Defendant Bruce E. Kiddoo ("Kiddoo") has served as a member of the Board since December 2020 and as a member of the Audit Committee since 2021.

20.      Defendant Paul A. Mascarenas ("Mascarenas") has served as a member of the Board since 2014 and has served as Chair of the Governance Committee and a member of the Human Capital and Compensation Committee ("Compensation Committee") since at least 2020. On June 27, 2023, Defendant Mascarenas sold 1,450 shares of Company stock for proceeds of over $128,500:

| Date of Transaction | Number of Shares Sold | Price | Proceeds |
|---|---|---|---|
| 6/27/2023 | 1,450 | $88.63 | $128,513.50 |

21.    Defendant Thad Trent ("Trent") has served as the Company's EVP, Chief Financial Officer ("CFO"), and Treasurer since February 2021.

22.    Defendant Gregory Waters ("Waters") has served as a member of the Board since December 2020 and has served as a member of the Compensation Committee since 2022.

23.    Defendant Christine Yan ("Yan") has served as a member of the Board since October 2018 and has served as Chair of the Compensation Committee since at least 2020. On August 17, 2023, Defendant Yan sold 3,624 shares of Company stock for proceeds of almost $334,000:

| Date of Transaction | Number of Shares Sold | Price | Proceeds |
|---|---|---|---|
| 8/17/2023 | 3,624 | $ 92.16 | $ 333,987.84 |

24.    Relevant Non-Party Christina Lampe-Önnerud ("Lampe-Önnerud") has served as a member of the Board since September 2023.

25.    The following Defendants collectively referenced herein as the "Individual Defendants": Abe, Campbell, Carter, Deitrich, El-Khoury, Keeton, Kiddoo, Lampe-Önnerud, Mascarenas, Trent, Waters, and Yan.

26.    The following Individual Defendants are collectively referenced herein as the "Director Defendants": Abe, Campbell, Carter, Deitrich, El-Khoury, Kiddoo, Mascarenas, Waters, and Yan.

27.    The following Individual Defendants are collectively referenced herein as the "Insider Trading Defendants": El-Khoury, Keeton, Mascarenas, and Yan.

28.    The following Individual Defendants are collectively referenced herein as the "Audit Committee Defendants": Abe, Campbell, Carter, and Kiddoo.

29.     The following Individual Defendants are collectively referenced herein as the "Securities Class Action Defendants": El-Khoury, Keeton, and Trent.

30.     The Individual Defendants and Nominal Defendant are collectively referenced herein as "Defendants."

### THE INDIVIDUAL DEFENDANTS OWE FIDUCIARY DUTIES TO THE COMPANY AND ITS STOCKHOLDERS

31.     At all times relevant to this case, the Individual Defendants' conduct was governed by well-recognized rules to protect the Company and its stockholders, the members of the public who had invested in Onsemi.

32.     Because of their positions as officers and/or directors of the Company and their ability to control its business and corporate affairs, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

33.     The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

34.     Each of the Company's directors owes to the Company and its stockholders the fiduciary duties of care and loyalty, including good faith, oversight, and candor, to exercise good faith and diligence in the administration of the affairs of the Company and the use and preservation of its property and assets.

35.     Because of their positions of control and authority as directors and/or officers of the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts alleged herein.

36.     To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls

of the Company. By virtue of such duties, the officers and directors of Onsemi were required to do the following:

- Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- Conduct the affairs of the Company in a lawful, efficient, and business-like manner to make it possible for the Company to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- Properly and accurately inform investors and analysts as to the true financial condition of the Company at any given time, make accurate statements about the Company's financial results and prospects, and ensure that the Company maintains an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

- Remain informed as to how the Company conducted its operations, and, upon notice of imprudent or unsound conditions or practices, make reasonable inquiry into the nature and cause of such conditions and practices, correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws; and

- Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

37.     The Individual Defendants knowingly violated their obligations as directors and officers of the Company, acting without good faith and consciously disregarding their duties to the Company and its stockholders despite their knowledge of the risk of serious injury to the Company.

38.     Because of their positions of control and authority, the Individual Defendants were able to exercise control over the wrongful acts complained of herein, in addition to the contents of the various public statements issued by Onsemi.

39.     The Board has adopted the Company's Code of Business Conduct (the "Code of Conduct") to deter wrongdoing, and it imposes additional duties and responsibilities on the Individual Defendants.

40.     With respect to the accuracy of Company records and the provision of financial information in public reports, the Code of Conduct provides as follows:

**Accuracy of Company Records**

> Our Company records form the basis for our financial reports and other public disclosures. Therefore, honest and accurate recording and reporting of information is crucial to making responsible business decisions. This includes business data, such as quality, safety and personnel records, as well as all financial records. As a public company, it is essential that the information we submit in our Company records is complete, timely, accurate and understandable. Incomplete or untimely records can damage our Company's reputation and subject **onsemi** and the individuals involved to legal liability.

> All of our financial books, records and accounts must accurately reflect transactions and events. We must never make false or artificial entries. Further, we must always follow required accounting principles, as well as our Company's internal controls. For example, when a payment is made, it can only be used for the purpose spelled out in the supporting document. If you suspect any accounting or auditing irregularities or fraud, you should report them immediately.

**Providing Financial Information**

> At times, we may be called upon to provide information for our public reports. Our Company expects us to take this responsibility very seriously. In doing so, we must provide prompt and accurate answers to inquiries related to our public disclosure requirements. Remember

> that obtaining and providing complete and accurate business and financial information is crucial for us to comply with the law.

(Emphasis in original.)

41.     The Code of Conduct adds a "special responsibility" to, among others, each member of the Board, the CEO, and the CFO of the Company to ensure the accuracy and completeness of Onsemi's public disclosures. In relevant part, under the heading Special responsibility, the Code of Conduct states as follows:

**Special Responsibility**

> The Finance Department, certain Company officers and the directors of **onsemi** have a special responsibility to promote integrity within our Company. They are expected to ensure the accuracy and completeness of the public disclosures our Company provides. Because of this special role, the following individuals are required to know and understand the financial disclosure laws that apply to their work:
>
> - Each member of the Board of Directors
>
> - The principal executive officer
>
> - The principal financial officer
>
> - The principal accounting officer or controller, or persons performing similar functions
>
> - Each member of the Finance Department of **onsemi** Corporation and each of its subsidiaries
>
> Violations of financial disclosure laws will be viewed as severe offenses that may result in disciplinary action, up to and including termination. This includes failing to report potential violations by others. If you believe that a violation has occurred, contact the [Chief Compliance Officer, the Vice President, Ethics and Corporate Social Responsibility] or the Law Department. If you prefer to report on an anonymous basis, where allowed by law, you may submit a report to the Ethics Helpline. Remember, it is against Company policy to retaliate against anyone who makes a good faith report of violations.

(Emphasis in original.)

42.     Under the heading Inside Information and Securities Trading, the Code of Conduct states as follows:

**Inside Information and Securities Trading**

Through our work at **onsemi**, we may come across information about our Company or another publicly traded company that is considered inside information. "Inside information" is material, nonpublic information that an investor would consider important when making the decision to buy, hold or sell stock. Some common examples of inside information include:

- Unannounced acquisitions or divestitures

- Nonpublic information about our Company's financial results

- Pending or threatened litigation

- Significant new product developments

- Changes in senior management

We are not allowed to trade in securities or similar investments based on inside information. Doing so is called "insider trading," and is against the laws of many countries in which we do business. We must also avoid "tipping" others — or providing inside information to them so that they can make an investment decision based on inside information. Tipping is also illegal under insider trading laws.

43.    The Board has also adopted the Company's Amended and Restated ON Semiconductor Corporation Corporate Governance Principles (the "Principles").    The Principles state the following in connection with the Board:

**1. Role and Functions of the Board**

a.    Although the Company's business is conducted by its employees and officers, under the direction of the Chief Executive Officer of the Company (the "CEO"), the Board is elected by the Company's stockholders to oversee management and to assure that the long-term interests of the stockholders are being served.

b.    In addition to its general oversight of the Company's management, the Board, acting directly or through its various committees, also performs a number of specific functions, including, without limitation:

i.    reviewing and discussing the performance of the Company, its plans and prospects and any material

---

11

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

issues facing the Company, during regularly scheduled meetings and/or special meetings of the Board;

ii.  selecting, evaluating and compensating the CEO and other senior executives and overseeing CEO and senior executive succession planning based upon recommendations from the GS Committee (as defined below);

iii. reviewing, monitoring and, where appropriate, approving the fundamental financial and business strategies and major corporate actions of the Company;

iv.  providing oversight for the Company's risk management assessments and mitigation processes;

v.   ensuring processes are in place for maintaining the integrity of the Company, including, but not limited to, the integrity of the Company's financial statements, the integrity of the Company's compliance with applicable laws and ethical standards, the integrity of the Company's relationships with its customers and suppliers and the integrity of the Company's relationships with other stakeholders; and

vi.  performing such other functions as are prescribed by applicable law.

## DIRECTOR DEFENDANTS ON PARTICULAR COMMITTEES OWE ADDITIONAL DUTIES

44.  The Audit Committee Charter (the "Audit Charter") places additional duties and responsibilities upon the members of the Board's Audit Committee, which consisted of Abe, Campbell, Carter, and Kiddoo during the Relevant Period.

45.  Pursuant to the Audit Charter, the purpose of the Audit Committee includes the following:

Financial Statements and Disclosure Matters

5.   To review and discuss with management and the Independent Auditor the annual audited financial statements (including the related notes), the form of audit opinion to be issued by the Independent Auditor on the financial statements and disclosures made in management's discussion and analysis ("MD&A"), and other applicable SEC and Public Company Accounting Oversight Board requirements, and to recommend

to the Board whether the audited financial statements should be included in the Company's Annual Report on Form 10-K.

6.    To review and discuss with management and the Independent Auditor the Company's quarterly financial statements prior to the filing of its Quarterly Reports on Form 10-Q, including the results of the Independent Auditor's limited review of the quarterly financial statements and the MD&A contained therein.

7.    To review and discuss with management and the Independent Auditor: (i) any significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements; and (ii) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the Company's financial statements.

8.    To review and discuss with management: (i) the Company's disclosure controls and procedures; (ii) management's conclusions about the efficacy of such disclosure controls and procedures, including (A) any significant deficiencies in, material non-compliance with or material weakness in respect of, such controls and procedures, (B) any disclosures made to the Committee by the Company's Chief Executive Officer and Chief Financial Officer during their certification process for Forms 10-K and 10-Q, and/or (C) any fraud involving management or other employees who have a significant role in the Company's internal controls; and (iii) any significant change in internal controls implemented by management during the most recent reporting period.

9.    To review and discuss with management and the Independent Auditor management's annual internal control report, including any attestation of the same by the Independent Auditor.

10.   Pursuant to the Exchange Act, to establish procedures for: (i) the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters; and (ii) the confidential, anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters.

*          *          *

14.   To review and provide guidance and recommendations to the Board regarding major financial risk exposures and risk management policies.

Oversight of the Company's Internal Audit or Comparable Internal Function

\*     \*     \*

17. To review and discuss the significant reports provided to management prepared by the Internal Audit Function and management's responses.

Compliance Oversight Responsibilities

18. To obtain reports from management, the Company's head of the Internal Audit Function, the General Counsel and other appropriate members of the Law Department, as appropriate, with respect to: (i) any known material non-compliance with applicable legal requirements by the Company or material reports or inquiries by governmental agencies or regulators regarding such matters; (ii) other legal and regulatory matters that may have a material impact on the Company's financial statements or compliance policies; and (iii) the effectiveness of the Company's legal compliance policies and programs.

\*     \*     \*

Other Responsibilities

24. To review the Company's Enterprise Risk Management Program and provide guidance and recommendations to the Board regarding its risk oversight responsibilities.

## **ADDITIONAL BACKGROUND**

46. Headquartered in Scottsdale, Arizona, Onsemi provides automotive, industrial, 5G and Cloud Power, Medical, and Aerospace and Defense solutions. The Company purports to provide "intelligent power technologies [that] enable energy efficient solutions across all applications by providing improved power factor, enhanced active-mode efficiency and reduced standby mode power consumptions."

47. Onsemi operates in three segments: (i) Power Solutions Group ("PSG"), which offers semiconductor products for several applications, such as power switching, power conversion, signal conditioning, circuit protection, signal amplification, and voltage regulation functions, (ii) Advanced Solutions Group ("ASG"), which designs and develops analog, mixed-signal, advanced logic, Wi-Fi, and other products for the electric power

industry: and (iii) Intelligent Sensing Group ("ISG"), which offers metal oxide semiconductors image sensors; proximity sensors; image signal processors; radars; and actuator drivers for autofocus and image stabilization for a range of customers in automotive, industrial, medical, aerospace/defense, communications, networking, wireless, consumer, and computing markets. Many of the Company's PSG customers are in the automotive industry, and a substantial portion of Onsemi's SiC products are necessary components of several systems used in the production of electric vehicles ("EVs").

48.     The Company manufactures and sells semiconductor components for various electronic devices, including power and sensing solutions, and technologies for the electrification of the automotive industry, and serves original equipment manufacturers ("OEMs").

49.     Critical to the Company's long-term growth and success is Onsemi's business strategy of focusing on the development, manufacture, and sale of a variety of products incorporating SiC. As such, On October 28, 2021, Onsemi acquired GT Advanced Technologies Inc. ("GTAT")—a SiC producer. GTAT had significant experience in crystalline growth, including SiC. SiC is a key material for semiconductors that provides technical benefits in SiC power switching devices, significantly improving system efficiency in EVs, EV charging, and energy infrastructure.

50.     The Company "offers full spectrum of high, medium, and low voltage power discrete devices along with advanced power module solutions, including insulated gate bipolar transistor ("IGBT"), metal–oxide–semiconductor field-effect transistors with insulated gates ("MOSFETs"), SiC, Silicon/Silicon Carbide ("Si/SiC") Hybrid Diode, SiC Diode, and Intelligent Power Modules (IPMs)."

51.     SiC offers an advantage over regular silicon because, with less resistance to moving away from the source (due to increased efficiency), SiC devices can operate at a higher switching frequency. A SiC-based system is also more compact and lightweight than

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

a regular silicon solution, allowing for smaller designs. SiC devices purport to increase efficiency and improve your thermal management.

### DEFENDANTS BREACH THEIR DUTIES TO THE COMPANY AND ITS STOCKHOLDERS BY MAKING FALSE AND MISLEADING STATEMENTS

52.     On May 1, 2023, the Company issued a press release announcing its first quarter 2023 financial results. During the related earnings call, Defendant El-Khoury spoke significantly on the growth of the Company's SiC business and emphasized the fact that the Company has "more and more confidence" in its claim that the Company would reach $1 billion in annual revenue for its SiC products in 2023. Explicitly, Defendant El-Khoury explained that the Company's outlook was "actually very, very predictable," which was "the benefit that we've been talking about with the LTSAs that have us really, with our customers, align on pricing and volume through the duration of the LTSAs."

53.     On May 16, 2023, the Company held its Financial Analyst Day conference. During the conference, Defendants El-Khoury, Trent, and Keeton, among others, gave presentations on the Company's products, business plan, and financial performance, among other things. Defendant Keeton focused his presentation on the Company's SiC products and discussed the Company's "confiden[ce] on the path to the first $1 billion in [SiC]." Specifically, Defendant Keeton commented that Onsemi has "LTSAs with literally hundreds of devices on a single LTSA for a single customer" and that "[t]he onsemi manufacturing machine is firing on all cylinders."

54.     In praising Onsemi's "160% annual growth rate for the past 2 years and this year," Defendant Keeton noted that the Company's "extremely high growth [was] driven by customer wins and LTSAs with optimized solutions." To conclude his prepared remarks, Defendant Keeton stated that his presentation was "[a] lot of talk, but actions speak louder than words and our customer actions prove that we have value with $9 billion of [SiC] LTSAs in electrification and energy infrastructure" over the next three to five years.

55.     During the same conference, Defendant Trent discussed the Company's recent financial performance and touted that the Company's LTSAs provide Onsemi with "really good visibility and tight integration into our customers on how do we align with them." With respect to the Company's product mix, Defendant Trent further stated that "last quarter, 79% of our business was auto and industrial" and that "over the time horizon, you're looking at auto and industrial being north of 85% of the total company."

56.     During the conference, an analyst with Bank of America (BofA) Securities asked about the Company's $1 billion SiC target for 2023 and the competitive landscape for SiC over the next several years. Defendant El-Khoury responded and reassured investors that the Company's growth is "supported by the LTSAs, which extend through that period of time" and that "[w]e have established a very strong infrastructure and a very strong foundation . . . with the $1 billion in '23 and LTSAs moving forward, and we're going to sustain that." Defendant El-Khoury further asserted that "from the LTSA perspective, our LTSA is . . . multiyear in duration, where both volume and pricing is locked in" and guaranteed that the revenues relating to the LTSAs would be achieved.

57.     Moreover, Defendant El-Khoury rejected the outlook presented by an analyst from Truist Securities, Inc. that Onsemi would not see any "meaningful correction on the path to 2027" and reassured investors that "we're going to manage very, very tightly agnostic of where we are in up or down years from an industry perspective, we're going to use [SiC inventory] as a tool for our own business as we want to run it and as we see it with the LTSAs, which is a very, very clear view of where demand is."

58.     On May 23, 2023, Defendants El-Khoury and Trent presented at an industry conference hosted by JPMorgan Chase & Co. During the conference, Defendant El-Khoury credited the Company's "very good position" to "solid LTSA or revenue committed by customer[s]," and stated that "[o]ur strategy is solid" and "has been stressed with the macro environment, and it's sustainable." Defendant El-Khoury also reiterated that the current LTSA commitment "is at a $9 billion lifetime revenue for [SiC]."

59.     On July 31, 2023, Onsemi held an earnings call to discuss its second quarter of 2023. During the call, Defendant El-Khoury congratulated the Company for "sign[ing] more than $3 billion of new [SiC] LTSAs" and raising the Company's committed SiC revenue to "over $11 billion." During the call, Defendant El-Khoury further touted the benefit of the Company's LTSAs in providing "extended visibility" and "stability in pricing and volume commitments."

60.     During the call, an analyst questioned the strength of the automotive and industrial markets because, according to Defendant El-Khoury, the Company's SiC LTSA mix is "[a]bout 90% [in] auto, about 10% [in] industrial." In response, Defendant El-Khoury reassured investors that the automotive and industrial markets remain "healthy" and that the "strength in these markets is sustained."

61.     On August 30, 2023, Defendants El-Khoury and Trent attended an industry conference hosted by Deutsche Bank AG. In response to the host's question about the current demand environment for Onsemi's business segments, Defendant El-Khoury emphasized that the Company "designed [its] own soft landing" by actively managing the Company's inventory and reducing its manufacturing utilization, which made Onsemi's yearly outlook "very predictable." During the conference, Defendant Trent followed up on Defendant El-Khoury's statements and asserted that Onsemi's automotive and industrial segments are "steady" and "strong." Importantly, Defendant El-Khoury asserted that, even in a softer market, Onsemi is "in a much better position with the visibility of our business than a lot of our peers" because, if the Company's customers "have . . . softness in their market and they have an LTSA, we're going to get the call 6 months in advance."

62.     On September 7, 2023, Defendants El-Khoury and Trent attended an industry conference hosted by Citigroup Inc. During the conference, the host inquired as to why the "downturn is hitting everybody else, [but] isn't hitting [onsemi]?" Defendant Trent responded that "the LTSA coverage that we have is actually protecting us and we're building the LTSAs." Defendant El-Khoury also stressed the Company's greater visibility into

customer demand than Onsemi's competitors and explained that "[w]e pegged it to LTSAs" and that, "given that most of our business is under LTSA, we're getting that visibility." Defendant El-Khoury further explained the visibility and stability benefits of LTSAs:

> If I get one thing from the LTSA, I'm going to get a phone call, as soon as the customer sees softness. That's it. I want a phone call because that's the conversation I want to have. Historically, backlog disappeared 30 days before I ship it, and you're left holding the bag.

> So [with] the LTSAs, somebody is going to get the bat phone and call and say, we got a problem, 6 months, 9 months from now, let's have a conversation. So we'll have the conversation, but it has to be a win-win.

63.     The above statements identified in ¶¶ 52-62 were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Individual Defendants failed to disclose that (1) the billions of dollars in revenue in reported LTSAs were not "committed," "locked in," nor effectively certain to be obtained by the Company; (ii) LTSAs did not provide "predictable" and "sustainable" performance to drive the Company's growth; (iii) the Company did not have "good visibility" into customer demand; (iv) customer demand could be reduced on short notice, even where LTSAs were in effect; and (v) as a result, statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

## INSIDER TRADING DEFENDANTS SELL
## COMPANY STOCK AT ARTIFICIALLY INFLATED PRICES

64.     During the period of wrongdoing described above, Onsemi insiders sold Company stock at artificially inflated prices while in possession of material non-public Company information.

65.     During the Relevant Period, the Insider Trading Defendants (El-Khoury, Keeton, Mascarenas, and Yan) sold Company stock while it was trading at artificially

inflated prices due to the false and misleading statements alleged herein and while they were in possession of material non-public Company information:

- Between May 15, 2023 and July 18, 2023, Defendant El-Khoury sold 70,000 shares of Company stock for proceeds of $6,591,026.

- Between June 30, 2023 and October 5, 2023, Defendant Keeton sold 32,919 shares of Company stock for proceeds of almost $3,316,724.

- On June 27, 2023, Defendant Mascarenas sold 1,450 shares of Company stock for total proceeds of almost $128,514.

- On August 17, 2023, Defendant Yan sold 3,624 shares of Company stock for proceeds of almost $333,988.

66.     While many of the Company's stockholders lost significant money with the shares dropping substantially, the Insider Trading Defendants sold their shares at artificially high prices and avoided the staggering losses suffered by stockholders.

67.     As a result, the Insider Trading Defendants benefited from the artificial inflation of the price of the Company's stock and the resulting increase in the value of Onsemi stock and stock options they held.

**ONSEMI REPURCHASES SHARES DURING THE RELEVANT PERIOD**

68.     During the time in which Onsemi's operations and financial performance were overstated and the Company's various schemes and operational problems were improperly concealed, the Individual Defendants caused the Company to repurchase millions of dollars' worth of its own common stock.  As a result, Onsemi overpaid for its repurchases, which were made at prices artificially inflated by Defendants' misconduct, thereby injuring the Company.

69.     In February 2023, the Board approved a share repurchase program (the "Share Repurchase Program"), which allows for the repurchase of our common stock from time to time through a variety of methods, including in privately negotiated transactions or open market transactions, such as pursuant to a trading plan in accordance with Rule 10b5-1 and Rule 10b-18 of the Exchange Act or a combination of methods. The Share Repurchase Program, which does not require that the Company purchase any minimum amount of its common stock, has an aggregate limit of $3.0 billion from February 8, 2023 through December 31, 2025 (exclusive of fees, commissions and other expenses).

70.     The repurchases under the Share Repurchase Program amounted to $564 million during the fiscal year ending December 31, 2023.  In fact, according to the Company's Form 10-K, one of the significant uses of the Company's cash in 2023 was "repurchases of approximately 7.6 million shares of common stock for an aggregate purchase price of $564.0 million under the Share Repurchase Program."

71.     For the quarterly period ending June 30, 2023, the Company repurchased 700,000 shares at an average weighted price of $86.49 per share and expended $300,000 in fees to complete the repurchases.

72.     For the quarterly period ending September 29, 2023, the Company repurchased 1.1 million shares at an average weighted price of $94.48 per share and expended $800,000 in fees to complete the repurchases.

73.     For the period September 30, 2023 through October 27, 2023, the Company repurchased 4,470,107 shares at an average price of $94.40, plus associated fees.

74.     Despite the Individual Defendants' knowledge of the true facts about the Company's business and financial prospects, the Individual Defendants nevertheless authorized and executed the Company's purchases of its own stock at artificially inflated prices.

75.     Moreover, the Company's repurchases falsely signaled to shareholders and the public that the purchase of Onsemi stock at those prices was the best use of the Company's

cash and that the purchases of the stock at the market price prevailing at that time represented a good value for the Company.  In truth, the Company's expenditures on its own stock were so recklessly imprudent as to constitute corporate waste.

## THE TRUTH IS REVEALED

76.     On October 30, 2023, the Company announced its third quarter 2023 financial results. On that day, investors learned the truth about the purported benefits of the Company's LTSA strategy and the achievability of projected revenue from the Company's products subject to LTSAs.

77.     During the related earnings call, Defendant El-Khoury revealed that Onsemi would miss its $1 billion SiC 2023 revenue target by approximately $200 million—roughly 20% of the Company's expected SiC revenue for the year— due to "a single automotive [original equipment manufacturer's] recent reduction in demand."

78.     During the call, Defendant Trent revealed that, despite previous statements that Onsemi's LTSAs provided visibility into customer demand and effectively guaranteed revenue for the Company, it now expected "a mid-single digit decline in automotive given the softness in Europe that [Defendant El-Khoury] described, with greater sequential declines in industrial and other end markets." Defendant Trent explained that the LTSAs were not as "locked in" as the Company had stated because "we are allowing some pushouts as long as there's a win-win for both companies in that situation" and "[w]e don't want to overship natural demand." Defendant El-Khoury further stated as follows:

> I will comment on the LTSAs. So the LTSAs are legally binding. Therefore, for us to agree or even acknowledge that pushout or even the demand in general, outside of [SiC] in Q4, there has to have been, which there is, a win-win for us and the customer. We've always said, if anything, the LTSAs give us a phone call. We get the phone call way ahead of time in certain areas when the customer knows that it's coming. And we're able to manage with the customer for a win-win, whether that win-win is a quarter later or a year later or a longer term that depends on case by case. So we manage it with the customer because what we don't want is, of course, enforce the LTSA at the expense of just shipping inventory if demand is lower. So we take it very cautiously.

79.     Despite the Company's claim that LTSAs would only be modified in the event of a "win-win," analysts understood that the SiC reduction in its expectations for the fourth quarter revealed the true state of affairs—that LTSAs did not provide the type of "locked[-]in" revenue stream the Company had touted. BofA Securities put it bluntly regarding the basis for the Company's stock valuation: "[b]y guiding down Q4 [onsemi] has created doubts about the durability of its [SiC LTSAs], a key part of the bull thesis." UBS Securities LLC likewise noted that "[t]he bloom is 'off the rose' with respect to [onsemi]'s [LTSAs]" and that it was "cutting [their] C2024 [earnings per share]," while Goldman Sachs & Co. LLC concluded that the disclosure "brings into question . . . the viability of LTSAs."

80.     Analysts with TD Cowen stated that "[w]e think the stock's -22% reaction today is due to . . . an injection of uncertainty in its SiC business which was viewed as having a clear growth trajectory covered by LTSAs." Analysts at William Blair & Company, L.L.C. stated as follows regarding the failure of the LTSAs:

> **What Happened to LTSAs**? The management team has been very confident in its LTSA strategy providing visibility and preventing demand surprises. We have questioned the efficacy of these LTSAs when push comes to shove, because if your customer cannot use the product, it is bad business to make them take it, and even worse business to sue your customer over contract fulfillment. We have seen "iron-clad" LTSAs fall apart in cyclical downturns . . . . If an LTSA with Tesla is fallible, how should investors interpret the LTSAs with four of the top five Chinese EV players?

(Emphasis in original.)

81.     On this news, the Company's stock dropped $18.18 per share, or almost 22%, from a close of $83.52 per share on October 27, 2023, to close at $65.34 per share on October 30, 2023.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT
## DIRECTLY AND PROXIMATELY CAUSES DAMAGES TO ONSEMI

82.     As a result of the Individual Defendants' misconduct, Onsemi disseminated false and misleading public statements concerning Onsemi's operations, prospects, and internal controls. This misconduct has devastated Onsemi's credibility.

83.     As a direct and proximate result of the Individual Defendants' actions, Onsemi has expended and will continue to expend significant sums of money defending and paying any judgment or settlement in the Securities Class Action.

84.     As a direct and proximate result of the Individual Defendants' actions as alleged above, Onsemi's market capitalization has been substantially damaged, losing millions of dollars in value because of the conduct described herein.

85.     The actions of the Individual Defendants have also irreparably damaged Onsemi's corporate image and goodwill. For the foreseeable future, Onsemi will suffer from what is known as the "liar's discount," a term applied to the stocks of companies that have been implicated in illegal behavior and have misled the investing public, such that Onsemi's ability to raise equity capital or debt on favorable terms in the future is now impaired.

86.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued or joined in the pursuit of a common course of conduct and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

87.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct were, among other things, to (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) conceal adverse information concerning the Company's operations, financial condition, future business prospects, and internal controls; and (iii) artificially inflate the Company's stock price.

88.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or with gross negligence to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, Individual

Defendants collectively and individually took the actions set forth herein. The Individual Defendants described herein were direct, necessary, and substantial participants in the common enterprise and/or common course of conduct complained here because the action described herein occurred under the authority and approval of the Board.

89.     Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

90.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and Onsemi and was at all times acting within the course and scope of such agency.

**PLAINTIFF HAS BEEN A STOCKHOLDER SINCE THE ALLEGED WRONGDOING AND WILL FAIRLY AND ADEQUATELY REPRESENT THE COMPANY'S AND ITS STOCKHOLDERS' INTERESTS**

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

92.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' misconduct.

93.     Plaintiff is the owner of Onsemi common stock and has been an owner of Onsemi common stock since the wrongdoing alleged herein.

94.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting the Company's rights.

**DEMAND IS FUTILE BECAUSE EACH DIRECTOR DEFENDANT**
**FACES A SUBSTANTIAL LIKELIHOOD OF PERSONAL LIABILITY**

95.     At the time Plaintiff commenced this action, the Board consisted of ten directors, including Director Defendants Abe, Campbell, Carter, Deitrich, El-Khoury, Kiddoo, Mascarenas, Waters, and Yan, and Relevant Non-Party Lampe-Önnerud.

96.     The Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

97.     The Director Defendants all face a substantial likelihood of liability for their individual misconduct. The Director Defendants were directors throughout the time of the false and misleading statements and, as such, had a fiduciary duty to ensure the accuracy of the Company's SEC filings, press releases, and other public statements and presentations concerning Onsemi's business, operations, prospects, internal controls, and financial statements.

98.     Moreover, the Director Defendants owed and owe a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust, effective, and implemented effectively, and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

99.     The Director Defendants face a substantial likelihood of personal liability because of their conscious and knowing authorization of false and misleading statements, their failure to timely correct such statements, their failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective and implemented effectively, and their failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required

diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability.

100.    In addition, the Director Defendants caused the Company to repurchase over 6,676,981 shares of Onsemi common stock at artificially inflated prices during the Relevant Period for a total overpayment of around $183,741,577.

101.    If Director Defendants were to bring a suit on behalf of Onsemi to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. For this reason, Plaintiff's making a demand would be futile.

### THE AUDIT COMMITTEE DEFENDANTS FACE A GREATER LIKELIHOOD OF PERSONAL LIABILITY

102.    The Audit Committee Defendants (Abe, Campbell, Carter, and Kiddoo), as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements. More specifically, as members of the Audit Committee, the Audit Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, the Audit Committee Defendants, as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process and its systems of internal accounting and financial controls and other financial information provided by the Company, as required by the Audit Committee Charter. For this reason, the Audit Committee Defendants cannot exercise disinterested business judgment in considering a demand.

### INSIDER TRADING DEFENDANTS ON THE BOARD FACE A GREATER LIKELIHOOD OF LIABILITY

103.    Because of their positions as officers and/or board members, Defendants El-Khoury, Mascarenas, and Yan possessed material non-public information, unlawfully misused this information, and unjustly enriched themselves at the Company's expense by selling their shares at artificially inflated prices. Defendants El-Khoury, Mascarenas, and Yan each face a substantial likelihood of liability for insider selling as well as for their

breaches of fiduciary duty to the Company and are, thus, incapable of considering a demand to commence and vigorously prosecute this action.

## DEFENDANT EL-KHOURY LACKS INDEPENDENCE

104.    Defendant El-Khoury is not independent because his principal occupation is CEO of Onsemi. For the Company's fiscal year 2020, Defendant El-Khoury received a total compensation of $7,866.813; for the Company's fiscal year 2021, Defendant El-Khoury received a total compensation of $12,825,562; and for the Company's fiscal year 2022, Defendant El-Khoury received a total compensation of $16,519,702. These amounts are material to Defendant El Khoury, and therefore, he would not be able to impartially consider a demand against the Compensation Committee Defendants, who approve his executive compensation.

105.    Defendant El-Khoury also faces an additional substantial likelihood of liability because he is a named defendant in the Securities Class Action that asserts claims against him under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated under the Exchange Act. If the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendant El-Khoury's willful and/or reckless violations of his obligations as a director of Onsemi. Hence, Defendant El-Khoury is incapable of considering a demand to commence and vigorously prosecute this action because he faces a substantial likelihood of personal liability than the rest of the Director Defendants.

## DEFENDANTS ABE, MASCARENAS, AND WATERS LACK INDEPENDENCE

106.    Defendants Abe, Mascarenas, and Waters are not independent and cannot exercise disinterested business judgment in considering a demand.

107.    Defendant Abe has served as a member of the board of directors of Fujitsu Ltd ("Fujitsu") since 2015. According to a Schedule 14A filed with the SEC on April 6, 2023

("2023 Proxy Statement"), Onsemi entered into commercial transactions with Fujitsu. If Defendant Abe is found liable for the allegations alleged herein, it would call into question his competence to oversee Fujitsu's business, operations, and prospects and could harm Fujitsu. Thus, Defendant Abe lacks independence and cannot exercise independent business judgment to consider a demand against the Individual Defendants.

108.   Defendant Mascarenas served as a member of the board of directors of Borg Warner, Inc. ("Borg Warner") from 2018 through 2022. Pursuant to the 2023 Proxy Statement, the Company entered into commercial transactions with Borg Warner while Defendant Mascarenas was still serving as a director for Borg Warner. Thus, Defendant Mascarenas lacks independence and cannot exercise disinterested business judgment to sue the Individual Defendants whose actions benefitted him while serving as a director of Borg Warner.

109.   Defendant Waters served as a director of Sierra Wireless Inc. ("Sierra Wireless")  from 2020 through to 2023. According to the 2023 Proxy Statement, Onsemi entered into commercial transactions with Sierra Wireless while Defendant Waters was still serving as a director for Sierra Wireless. As such, Defendant Waters lacks independence and cannot exercise disinterested business judgment to sue the Individual Defendants whose actions benefitted him while serving as a director of Sierra Wireless.

110.   Accordingly, Defendants Abe, Mascarenas, and Waters could not exercise independent or disinterested business judgment in considering a demand to investigate and prosecute the claims asserted in this action.

**FIRST CAUSE OF ACTION**
**Against the Individual Defendants for Breach of Fiduciary Duties**

111.   Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

112.    Each Individual Defendant owed the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Onsemi's business and affairs.

113.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

114.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Onsemi.

115.    In breach of their fiduciary duties owed to Onsemi, the Individual Defendants willfully or recklessly made, or caused or permitted the Company to make, false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that (i) the billions of dollars in revenue in reported LTSAs were not "committed," "locked in," nor effectively certain to be obtained by the Company; (ii) LTSAs did not provide "predictable" and "sustainable" performance to drive the Company's growth; (iii) the Company did not have "good visibility" into customer demand; (iv) customer demand could be reduced on short notice, even where LTSAs were in effect; and (v) as a result, statements about the Company's business, operations, prospects, and ability to effectively manage its supply chain and production lacked a reasonable basis.

116.    Accordingly, Onsemi's public statements were materially false, misleading, and lacked a reasonable basis during the Relevant Period, thereby causing the stock to trade at artificially inflated prices.

117.    The Individual Defendants failed to and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, thereby rendering themselves personally liable to the Company for breaching their fiduciary duties.

118.   The Individual Defendants also failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls in breach of their fiduciary duties.

119.   The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard to the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

120.   The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained or acted with reckless disregard for the truth in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

121.   These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

122.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Onsemi has sustained and continues to sustain significant damages. As

1  a result of the misconduct alleged herein, the Individual Defendants are liable to the

2  Company.

3  **SECOND CAUSE OF ACTION**
**Against the Securities Class Action Defendants for**

4  **Violations of Sections 10(b) of the Exchange Act and Rule 10b-5**

5      123.   Plaintiff incorporates by reference and realleges each and every allegation set

6  forth above as though fully set forth herein.

7      124.   The Individual Defendants are liable to the Company because they violated

8  Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

9      125.   The Individual Defendants did the following while acting individually and

10  collectively:

11          a)    employed devises, schemes, and artifices to defraud;

12          b)    made untrue statements of material fact or omitted to state material facts

13                  necessary in order to make the statements made, in light of the

14                  circumstances under which they were made, not misleading; or

15          c)    engaged in acts, practices, and a course of business that operated as a

16                  fraud or deceit upon the Company in connection with its purchases of

17                  Onsemi common stock during the Relevant Period.

18      126.   As set forth above, the Individual Defendants disseminated or approved the

19  dissemination of materially false and misleading statements while also failing to disclose

20  material facts necessary to make the statements made not misleading under the

21  circumstances.

22      127.   The Individual Defendants knew or recklessly disregarded facts showing that

23  these statements were false and misleading because they received or had access to such

24  information.

25      128.   As a result of the Individual Defendants' making these materially false and

26  misleading statements or permitting them to be made, Onsemi's common stock traded at

27  artificially inflated prices during the Relevant Period.

28

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

129.    As discussed above, for the fiscal year ending December 31, 2023, the Company spent $564 million to repurchase approximately 7.6 million shares of Onsemi common stock at artificially inflated prices.

130.    Accordingly, the Company has suffered damages because it paid artificially inflated prices for Onsemi common stock.

### THIRD CAUSE OF ACTION
**Against the Securities Class Action Defendants for**
**Contribution under Sections 10(b) and 21D of the Exchange Act and Rule 10b-5**

131.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

132.    Onsemi, along with the Securities Class Action Defendants (El-Khoury, Keeton, and Trent), are named as Defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. If the Company is found liable in the Securities Class Actions for these violations of the federal securities laws, the Company's liability will be in whole or in part due to the Securities Class Action Defendants' willful and/or reckless violations of their obligations as officers and/or director of Onsemi.

133.    Because of their positions of control and authority as officers and/or directors of Onsemi, the Securities Class Action Defendants were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Onsemi, including the wrongful acts complained of herein and in the Securities Class Actions.

134.    Accordingly, the Securities Class Action Defendants are liable under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), which creates an implied private right of action for contribution, Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

135.    As such, Onsemi is entitled to receive all appropriate contribution or indemnification from the Securities Class Action Defendants.

## FOURTH CAUSE OF ACTION
### Against the Individual Defendants for Unjust Enrichment

136.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

137.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Onsemi.

138.    The Individual Defendants benefitted financially from the improper conduct, received unjustly lucrative bonuses tied to the false and misleading statements, and received bonuses, stock options, or similar compensation from Onsemi that was tied to the performance or artificially inflated valuation of Onsemi, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

139.    Plaintiff, as a stockholder and representative of Onsemi, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants from their wrongful conduct and breach of their fiduciary duties.

## FIFTH CAUSE OF ACTION
### Against the Individual Defendants for Waste of Corporate Assets

140.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

141.    As a result of the misconduct described above, the Director Defendants have wasted corporate assets by forcing the Company to expend valuable resources repurchasing its own shares at artificially inflated prices as well as paying fees to complete the repurchases.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

142.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend legal actions (evidenced, for example, by the Securities Class Action), to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

143.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

## SIXTH CAUSE OF ACTION
### Against all the Individual Defendants for Aiding and Abetting

144.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

145.    Each of the Individual Defendants acted and is acting with knowledge of, or with disregard to, the fact that the Defendants are in breach of their fiduciary duties to Onsemi and has participated in a conspiracy in breach of fiduciary duties.

146.    In committing the wrongful acts alleged herein, each of the Individual Defendants has pursued or joined in the pursuit of a common course of conduct. The Individual Defendants have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to pursuing the wrongful conduct that gives rise to their primary liability, the Individual Defendants also aided, abetted, and assisted each other in breaching their respective duties.

147.    The Individual Defendants collectively and individually initiated and followed a course of conduct that violated the federal securities laws; authorized corporate actions to serve their own personal interests rather than the interests of the Company and its stockholders; misrepresented material facts about the Company, its financial condition, and business prospects; prevented the disclosure of material information necessary to make statements complete and accurate; and failed to implement and maintain an adequate system of internal controls and corporate governance practices.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

148.   The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and common course of conduct was, among other things, to disguise the Defendants' violations of law, including violations of the federal securities laws and breaches of fiduciary duty.

149.   Each of the Individual Defendants played a direct, necessary, and substantial part in the conspiracy, common enterprise, and common course of conduct complained of herein.

150.   Each of the Individual Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and were aware of their overall contributions to and furtherance of the wrongdoing.

## SEVENTH CAUSE OF ACTION
### Against the Insider Trading Defendants for
### <u>Insider Selling and Misappropriation of Information</u>

151.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

152.   The Insider Trading Defendants (El-Khoury, Keeton, Mascarenas, and Yan) stood in a confidential relationship with Onsemi and owed Onsemi duties of loyalty, good faith, and care as officers, directors, and/or controlling stockholders.

153.   At the time of their stock sales set forth herein, the Insider Trading Defendants knew of the information described above and sold Onsemi common stock on the basis of such information.

154.   The information described above was proprietary non-public information concerning the Company. It was a proprietary asset belonging to the Company, which the

Insider Trading Defendants used for their own benefit when they sold Onsemi common stock.

155.    The Insider Trading Defendants' sales of Company common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

156.    Because the use of the Company's proprietary information for their own gain constitutes a breach of Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits that the Insider Trading Defendants obtained thereby.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Onsemi and that Plaintiff is a proper and adequate representative of the Company;

B.    Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.    Ordering the Insider Trading Defendants to disgorge monies obtained as a result of their sales of Onsemi stock while in possession of insider information as described herein;

D.    Directing Onsemi and the Individual Defendants to take all necessary actions to reform and improve the Company's corporate governance and internal procedures to comply with applicable laws and to protect Onsemi and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

i.  a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

ii.  a provision to permit the Onsemi shareholders to nominate at least two candidates for election to the Board;

iii.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

E.  Awarding prejudgment interest to the Company;

F.  Granting appropriate equitable relief to remedy Individual Defendants' breaches of fiduciary duties and other violations of law;

G.  Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees and costs and expenses; and

H.  Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 14, 2024

Respectfully submitted,

*/s/ Mark D. Lammers*

Mark D. Lammers (Bar No. 010335)
RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Road, Suite 151
Tucson, AZ 85718
Telephone: 520.792.4800
Facsimile: 520.529.4262
Email: mdlammers@rllaz.com

Badge Humphries
BRAGAR EAGEL & SQUIRE, P.C.
2113 Middle Street, Suite 305
Sullivan's Island, South Carolina 29482
Telephone: 843-883-7444
Email: humphries@bespc.com

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael J. Hynes
Ligaya T. Hernandez
HYNES & HERNANDEZ, LLC
101 Lindenwood Drive, Suite 225
Malvern, Pennsylvania 19355
Telephone:484-875-3116
Facsimile: 484-875-9273
Email: mhynes@hh-lawfirm.com
        lhernandez@hh-lawfirm.com

*Counsel for Plaintiff Chik Chan*

39

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, Chik Chan, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint ("Complaint"). I have reviewed the allegations made in the Complaint, and as to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and, for that reason, believe them to be true. I further verify that I am a current holder, and have been a holder, of ON Semiconductor Corporation common stock at all relevant times.

Executed this 28 day of Feb , 2024.

_Chik Chan_
Chik Chan (Feb 28, 2024 10:52 EST)
Chik Chan

# 20240227_ON Semiconductor Corporation-Verification-Chan

Final Audit Report                                              2024-02-28

| | |
|---|---|
| Created: | 2024-02-28 |
| By: | Anthony Bowling (bowling@bespc.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAaGsLVJv6uqEz69v0hXPI5jBtLeZTXqYh |

## "20240227_ON Semiconductor Corporation-Verification-Chan" History

📄 Document created by Anthony Bowling (bowling@bespc.com)
2024-02-28 - 0:12:14 AM GMT

📧 Document emailed to tezza_chan21@yahoo.com.hk for signature
2024-02-28 - 0:12:25 AM GMT

📄 Email viewed by tezza_chan21@yahoo.com.hk
2024-02-28 - 3:51:22 PM GMT

✍ Signer tezza_chan21@yahoo.com.hk entered name at signing as Chik Chan
2024-02-28 - 3:52:42 PM GMT

✍ Document e-signed by Chik Chan (tezza_chan21@yahoo.com.hk)
Signature Date: 2024-02-28 - 3:52:44 PM GMT - Time Source: server

✅ Agreement completed.
2024-02-28 - 3:52:44 PM GMT

**Adobe Acrobat Sign**